# Ward *v.* The State.

## *Indictment for Murder.*

| 78 | 441 |
| 94 | 52 |
| 78 | 441 |
| 97 | 88 |
| 78 | 441 |
| 98 | 65 |
| 78 | 441 |
| 99 | 181 |
| 78 | 441 |
| 103 | 17 |
| 78 | 441 |
| 128 | 12 |
| 78 | 441 |
| 139 | 79 |

1. *Special venire at special term.*—When a special term is called and held for the disposal of business generally, for which regular juries are required, they must be drawn, summoned and organized as at a regular term; and if a capital case is tried, a special *venire* must be drawn, including the regular jury, as at a regular term. But, when a special term is called and held for the trial of a single capital case, a special *venire* of fifty persons must be summoned (Code, § 4739), and a jury must be organized from them for the trial, with talesmen if necessary.

2. *Dying declarations.*—Dying declarations are admitted as evidence with great caution, and the primary facts on which their admissibility depends are closely scrutinized; but, when it clearly appears that they were made under a conviction of impending death, as determined by all the attendant circumstances at the time, though the declarant may not have expressed in words his belief that he must soon die, the court must admit them, leaving the jury to judge of their weight and credibility.

3. *Explanatory charge as to considering all the evidence.*—The court having charged the jury, on the request of the defendant, that, if the evidence as to any material fact is equally balanced, they must lean to the side of mercy, and decide that fact in favor of the defendant,—may further instruct them, in explanation, that they must consider all the evidence in deciding on the guilt or innocence of the defendant.

4. *Charge in favor of escape of the innocent.*—In reply to the assertion of counsel, in argument, "that the law says it is better that ninety-nine guilty persons shall escape than that one innocent person shall suffer," the court may instruct the jury, that this proposition is not correct—that the policy of the law simply is, that the innocent shall go free, and that the guilty shall be punished.

FROM the Circuit Court of Dale.

Tried before the Hon. H. D. CLAYTON.

The defendant in this case, William J. Ward, was indicted for the murder of Jacob J. Parmer, by shooting him with a pistol; and being tried on issue joined on the plea of not guilty, was convicted of murder in the first degree, and sentenced to be hanged. The trial was had at a special term of the court, commencing on the 7th July, 1884, which was held under an order of the presiding judge of the court, made on the 12th April, 1884, and duly published. The special term was called, as recited in the order, "for the trial of said William J. Ward under said indictment;" and it was further ordered, as therein recited, "that fifty competent jurors be drawn and summoned, as provided by law, for said trial." On the organization of the jury, the entire panel having been exhausted before the jury was complete, two talesmen were summoned, from which to supply the deficiency; and one of these having been drawn, and accepted by the State, the defendant claimed the right to challenge him peremptorily, although he had already peremptorily challenged twenty-one, "on the ground that his right to peremptory challenges was not limited when the list of jurors regularly drawn and summoned was exhausted." The court refused to permit this challenge, and the defendant excepted. The bill of exceptions does not show any other objection to the jury as organized.

It was proved on the trial that the deceased was shot on the night of 6th September, 1883, while riding from the village of Echo, in the direction of his home, towards Newton. He received two shots, one in the back, and the other in the right shoulder, and died during the night from the effect of the wounds, before the arrival of a physician. The shooting occurred near the house of Charles Brannon, who heard the shots fired, and cries of distress immediately afterwards, and heard the deceased fall from his horse; and having procured the assistance of William Woodham, who lived about a mile distant, they went to the spot where the deceased was lying, and carried him to his own house, with the aid of several other persons

who came up. When found, the deceased was lying on the ground, with his head on his arm, very bloody, groaning, and apparently in great pain. In reply to questions, he stated "that Bill Ward shot him; that Ward rode up behind him, and asked who he was, and, being told his name, shot him, first in the back, and then in the shoulder." These statements, which were repeated to several persons, were offered in evidence as dying declarations; and to show their competency, the State proved by the several persons who were present the condition and appearance of the deceased at the time, and his declarations at different times during the night. To Brannon and Woodham, when they first found him, he said, "*I can't stand it*," or "*I can't stand it long;*" and asked them to help him; and when being carried home, he said, "*Boys, you don't know what a fix I am in;*" "*I can't stay with you much longer.*" Woodham asked him what physician should be sent for, and he said Dr. Smisson. He was spitting blood, complaining of great pain, and several times exclaimed "*Lord, have mercy.*" Woodham further testified, "that he never heard Parmer say he would die, nor others say so in his hearing." The defendant objected to the admission of the statements as dying declarations, and duly excepted to the overruling of his objections.

"The court charged the jury, on request of the defendant, that where the evidence is equal, or nearly so, in the proof of any fact tending to show the innocence or guilt of the defendant, the jury must lean to the side of mercy, and decide the fact in question in favor of the defendant. Thereupon, the solicitor requested the court, in writing, to charge the jury, that they must consider all the evidence in the case; which charge the court gave, and the defendant excepted."

"Counsel having stated to the jury, in argument, that the law says it is better that ninety-nine guilty persons shall escape than that one innocent person shall suffer, the court instructed the jury as follows: 'You have been told that the law is, that it is better that ninety-nine guilty men shall escape than that one innocent man shall suffer. No, gentlemen, the law does not institute such comparisons. The object of the law simply is, that it is better for the guilty to be punished, and the innocent to go unpunished, and there it stops on that subject.'" To this charge the defendant excepted.

In another part of the written charge to the jury, the court used the following language: "And here, too, we see his venerable father, and his loving mother, who causes us to regard her none the less that her deep solicitude has betrayed her into a serious indiscretion;" and to this part of the charge the defendant excepted. "In regard to this exception," the bill of

exceptions states, "it is proper to state, that it was preceded and followed by other allusions to the incidents of the trial, and thus concluded : 'But, gentlemen, we have nothing to do with these things, or what others may think should be your verdict.' It is proper to state, also, that after the testimony was closed, and one speech had been made for the prosecution, it being then near one o'clock, the court announced that a recess of one hour would be taken, and nearly all persons in the room had risen from their seats, when the attention of the court, still in his seat, was called to the mother of the defendant, who was talking to a juror. The court required the juror, under oath, to state what she had said to him; and the juror stated, that she told him the man who killed Parmer had never been suspected, and had left the country. The court ordered the sheriff to take charge of her, but ordered her discharge an hour afterwards."

OATES & COWAN, W. D. ROBERTS, J. W. FOSTER, and W. E. MAULDIN, for the appellant.

THOS. N. McCLELLAN, Attorney-General, for the State.

CLOPTON, J.—The statute provides, that a judge of the Circuit Court may hold a special term, whenever, in his opinion, necessary. At such special term, he may try and dispose of all causes, civil and criminal, that may come before the court, and do and perform all the business of the court, as at a regular term ; but the business shall be disposed of in the order the court may direct.—Code, § 652. The defendant was tried at a special term, which was ordered by the judge specially for his trial, and for no other business. The names of fifty persons were drawn, and they were summoned to serve as petit jurors. No objection is made in respect to the time or manner of drawing the names.

It is contended that the court was not legally organized for the trial of the defendant. The argument is, that regular petit juries should have been arranged from the fifty persons drawn and summoned ; that the court should have made an order, as provided by section 4874, commanding the sheriff to summon other persons, not less than fifty, nor more than one hundred, including the regular juries thus arranged ; and that such order is imperative, without which, and a compliance therewith, there can be no legally constituted jury to try the defendant. This question was fully considered in *Martin v. State*, 77 Ala. 1, where we held, that the fifty names, drawn and summoned under section 4739, "constitute the *venire*, from which the jury is to be selected and organized, unless the panel is ex-

[Ward v. The State.]

hausted before the jury is complete; in which case, talesmen must be summoned as in other capital cases." A reconsideration confirms the opinion then declared.

When a special term is held for the general trial of unfinished business, for which the organization of regular juries is required, the statutory provisions for drawing and summoning persons to serve as petit jurors are substantially the same as at a regular term. But, when the special term is held for the trial of a person charged with a felony, separate, distinct, and different provisions are made. In such case, the statute directs, that "fifty names must be drawn, if the offense may be punished capitally, and if not, twenty-four, to serve as petit jurors."—Code, 1876, § 4739. Section 4874 is designed to apply, and is only applicable, where the trial occurs at a term of the court when the statute contemplates and requires the arrangement of regular juries for the week or term, as provided by section 4763; and only those who are summoned on the regular juries for the week or term, and who are in attendance, constitute a part of the *venire*. When a special term is held for the trial of a person charged with an offense that may be punished capitally, and no other causes are to be tried, the statute does not contemplate, and no provision is made for, the organization of regular juries for the week or term. Only one jury, in such case, is provided for, being the jury for the trial of the particular case. The legislature does not mean that the court should perform, at such special term, the useless ceremony of organizing regular juries for the week or term. Hence the provision for drawing fifty names, ten days prior to the commencement of the special term, to serve as petit jurors for the trial of the special case, for which the term is ordered. At a special term held only for such purpose, section 4874 has no field of operation. Why different systems should have been enacted for drawing, summoning, and selecting a jury, as the trial may occur at a regular or special term, is not a matter addressed to our inquiry. With the wisdom or policy of the legislation we have no concern. It suffices that a trial by a jury, drawn, summoned, and impanneled in the manner provided by statute, which reasonably secures a trial by an impartial jury, is due process of law.

It is urged, with force and earnestness, that the dying declarations of the deceased were admitted without a proper predicate. The statements of the deceased, relating to his death, the circumstances under which it occurred, and to the identity of the prisoner as the person who caused it, when made under a sense of impending dissolution, are admissible, in cases of homicide, from necessity. Their admissibility is founded on the verification by human experience that, ordinarily, tempta-

tion to falsify is powerless, and passion silenced, in view of immediate death, and that the ·party is impressed with a necessity and obligation to speak the truth, equivalent to a solemn oath. But experience and observation further manifest, that sometimes hate and prejudice only expire with life, and that men seek to gratify a spirit of revenge in the face of immediate death. For these reasons, and from the fact that, in the absence of a cross-examination, the whole truth may not be elicited, because attention is not directed to some circumstances, or unconscious delusions, produced by surprise or alarm, are not dispelled ; it has been said, such evidence should be received with the greatest caution, and the primary facts, on which its admissibility depends, closely scrutinized. But, when the declarations are made under a conviction of impending death—when there is no hope of recovery—they must be received, and the responsibility put on the jury to judge their weight and credibility in view of the other evidence in the case.—*Kilgore v. The State*, 74 Ala. 1.

The ascertainment of the primary facts is for the court. The judicial mind must be satisfied ; and when satisfied that the requisite predicate is established, the duty to receive the evidence is imperative. To establish the pre-requisite facts, it is not necessary that the declarant shall express a conviction or belief that he must or will die. They may be reasonably inferred from attendant facts and circumstances, as any other fact of judicial ascertainment. Resort may be made to the nature and extent of his wounds, his physical state, his evident danger, his conduct, his contemporaneous expressions, the occurrence of death soon thereafter, and all other circumstances at the time ; and if from these the reasonable inference is, that the declarations were made under a conviction of impending death, it is sufficient.—*McLean v. State*, 16 Ala. 672 ; *Wills v. State*, 74 Ala. 21 ; *Kilpatrick v. Com.*, 31 Penn. St. 198 ; 1 Green. on Ev. § 158 ; Whar. Crim. Ev. § 282.

The deceased was shot just after dark, in two places—one ball entering about two inches from the spine on the left side, and lodging near the surface, about two inches below the left nipple ; and the other entering the right shoulder, and coming near the surface in front. When first seen, he was lying on the ground, with his head on his arm, unable to move, suffering great pain, and spitting blood. About two hours after he was shot, he was carried home, a distance of about two miles, undressed, put to bed, and died soon thereafter. The deceased was in fact *in extremis*. He was cognizant of the locality of the ball below the nipple ; and his expressions repeatedly made, before, and while being carried home, show a consciousness of his condition, and a conviction that he could

not survive the injury. The circumstances shown by the evidence, in the absence of anything indicating a hope of recovery, justified the court in admitting the dying declarations.—*Johnson v. State*, 17 Ala. 618.

The objection is urged to the charge, explanatory of the one given at the request of the defendant in respect to the proof of any fact being in equipoise, that it directs the jury to consider evidence that might be irrelevant to the particular fact. All the facts and circumstances in evidence, are admitted as relevant to the issue; and should be considered by the jury in ascertaining the principal fact—the guilt or innocence of the prisoner. While each allegation, essential to the guilt or innocence of the accused, must be established beyond a reasonable doubt, it is not proper to segregate the evidentiary facts, and consider the fragmentary parts separately, without respect to the entire evidence. When a case is properly and truly presented, the minor or evidentiary facts sustain a mutual and consistent relation, and each is, more or less, illustrated by the others. The intention of the explanatory charge was to prevent the instruction requested by defendant from misleading the jury in this respect. It is difficult to conceive a case, or circumstances, where an instruction to consider the whole evidence would be improper.—*Ming v. State*, 73 Ala. 1; *Dorgan v. State*, 72 Ala. 173.

The punishment of an innocent person is regarded as a greater evil, than the acquittal of one guilty; and the policy of the law is, that, in cases of doubt, it is safer to err in acquitting than in condemning. This policy is often expressed in the form, that it is better that many, or a definite number of guilty persons shall escape, than that one innocent should be made to suffer. These are but expressions of the practical effect of the rule of reasonable doubt, and that the jury should have an abiding conviction, to a moral certainty, of the truth of the charge. There is no rule of law instituting comparisons as to the number of guilty persons it is better to escape. It is likewise the policy of the law, that violators shall be punished in the public interest. If a charge, embodying the expression of counsel as used in the argument, had been asked, we have held, that it would not have been error to refuse it, because its tendency, unexplained, is to mislead.—*Farrish v. The State*, 63 Ala. 164; *Garlick v. The State*, at the present term. It was not, therefore, improper for the court to so instruct the jury, as to prevent its perversion to the acquittal of the defendant, if there was no reasonable doubt of his guilt, by misleading the minds of the jury as to the measure or degree of a doubt which may be regarded as reasonable. If the defendant supposed that the instruction was calculated to impair the force

of the rule as to the weight of the evidence necessary to a conviction, an explanatory or qualifying charge should have been asked. The court correctly stated the object of the law.

It must be admitted, that the mother of the defendant was, on the facts shown by the bill of exceptions, guilty of a serious indiscretion. The court treated her with tenderness and consideration. As it occurred in the presence of the jury, there was nothing improper in alluding to it, to prevent any undue influence in favor of the defendant; and no prejudice thereby could have resulted to him, when accompanied with the instruction, that they had nothing to do with these things, or what others might think ought to be their verdict.

The judgment of the Circuit Court is affirmed. It is accordingly ordered and adjudged, that on Friday, the 19th day of March, 1886, the sheriff of Dale county execute the sentence of the law, by hanging the said William J. Ward by the neck until he is dead, in obedience to the judgment of said Circuit Court as herein affirmed.