# CASES

IN THE

# SUPREME COURT OF ALABAMA.

## DECEMBER TERM, 1886.

## Jordan *v.* The State.

*Indictment for Murder.*

1. *Dying declarations; admissibility of.*—Held, as on the former appeal in this case (81 Ala. 20), that the declarations of the deceased, made about two hours after receiving the wounds which proved fatal, to a friend who was attending him before the arrival of a physician, "*Jule shot me, and Handy cut me, and all for nothing*," were properly admitted as evidence, on the testimony of the witness that the deceased said, just before, "he did not think he would get well," although the witness declared to him his own opinion that he would recover.

2. *Homicide by two, one striking fatal blow, or firing fatal shot.*—When two persons are on trial for murder, and the evidence shows that one of them cut the deceased with a knife as he advanced on the other, who then fired the fatal shot with a pistol, each is equally guilty, and it is not necessary that there should be positive proof of a common purpose previously formed.

FROM the City Court of Montgomery.

Tried before the Hon. THOS. M. ARRINGTON.

This is the third time this case has been before this court.—79 Ala. 9 ; 81 Ala. 20. The defendants, Jule Jordan and Handy Jordan, were jointly indicted and tried for the murder of Albert York, "by shooting him with a pistol," as alleged in the first count of the indictment ; and "by cutting him with a knife," as alleged in the second count. On the first trial, each of the defendants was convicted of murder in the second degree ; and that conviction being pleaded, on the last, as an acquittal of murder in the first degree, and the plea being sustained, they were tried for murder in the second degree ; to which they pleaded not guilty, but were again convicted, and sentenced to the penitentiary each for the term of ten years. It was shown on the trial, as appears from the bill of exceptions, which purports to set out "sub-

1

stantially all the evidence," that the homicide occurred in November, 1885, at the house of one Jerry Williams in the country, where a "party" was given by George Raoul or his wife, all the persons present being freedmen. The house consisted of two front rooms, one called the "dance room," and the other the "party room." There was a door connecting the two rooms, and a front door in each leading out to the road; and there was a shed room in the rear of each. In the early part of the evening, Jule Jordan, in attempting to light a cigar, put out the lamps in the "party room," and Mason Taylor and Sam Williams got into a dispute. Immediately after this, Mason Taylor, Jule Jordan, and Albert York, the deceased, left the house, and started off to another dance in the neighborhood; whereupon Jerry Williams and George Raoul followed them, and Raoul "attacked Mason Taylor about taking people away from his party." While the difficulty between Raoul and Taylor was going on, Jule Jordan said, according to the testimony of some of the witnesses, having his pistol in his hand, "I'll put a light through any one who hits Mason Taylor." This difficulty was quieted, and the parties returned to the house. "Handy Jordan was not present at this occurrence, and no witness testified that Handy knew or was informed of it." After the parties had returned to the house, "while Jerry Williams and Albert York were engaged with Jule Jordan trying to take a stick away from him (while Jule was not attempting to do any violence), Handy Jordan came into the room, and said, ' *Turn Jule loose, I'll cut you up ;*' whereupon Williams said they were not hurting Jule, and Handy went away." About a half hour after this, "while Mason Taylor was making some fuss in the dance room," Albert York walked up to him, cursed him, and knocked him down; whereupon Jule Jordan remonstrated with York, telling him he ought to be ashamed to strike Taylor. "The evidence for the State tended to show that York then started towards Jule Jordan, but turned and went out of the house, coming back at once, and again started towards Jule, who was standing near the rear wall in the room; that said York, in order to reach Jule, was compelled to pass by the fireplace, where Handy stood; that Handy reached out, as York passed, and cut him in the right shoulder; that York turned towards Handy, and Jule then shot him. But the evidence for the defendant tended to show that, when York first started towards Jule Jordan, some one separated them, and put York outside of the door into the yard; that he came back immediately, having in his hand a stick as large as a man's wrist, and as long as a man's arm, and rushed to-

[Jordan v. The State.]

wards Jule Jordan, who was standing near the fire-place, and who told him to stand back; that Jule retreated, as York advanced, until he reached the wall; that York grappled with him, holding the stick in one hand; but the testimony was contradictory, as to whether York still had the stick when Jule shot him." York died on the evening of the next day; and the physician who attended and dressed his wounds, testified that he died from the effects of the pistol shot, the cut with the knife not being dangerous.

The State introduced one Berry Johnson as a witness, who testified, "that he saw the deceased about eleven o'clock at night, about two hours after the shooting; that the deceased said to him, '*I am in a l ad fix, and don't think I will get over it*,' and asked him if he [witness] thought he would get well; that he [witness] examined the wounds, and said, '*Yes, I think you will get well, if you are careful ;*' that deceased stated, after this conversation, that he did not think he would get well, and then said: '*I am sobei. I am not drunk. I am in my sound senses. Jule shot me, and Handy cut me, and all for nothing ;*' that this was repeated several times before the doctor came, at twelve or one o'clock, but deceased did not say it after the doctor came." The defendants each objected to the admission "of this declaration of the deceased," and each excepted to the overruling of his objection.

The court gave the following charges to the jury, on the request of the State : (4.) "If the jury believe from the evidence, beyond a reasonable doubt, that Handy Jordan aided and abetted Jule in the killing of Albert York, then Handy is a principal, and responsible the same as Jule ; that is, if he acted in concert, afforded aid, encouraged, or consented thereto." (5.) "If the jury believe from the evidence, beyond a reasonable doubt, that Jule Jordan had formed the design to take the life of any person who should strike Mason Taylor, and, in pursuance of said design so formed, brought on a difficulty with the deceased, who had struck Mason Taylor, and took the life of the deceased in that difficulty ; then Jule Jordan, although he was about to be struck by the deceased, would be guilty of murder ; and if Handy Jordan was present, aiding and abetting Jule Jordan, he also would be guilty of murder, if it occurred in this county, and before the finding of this indictment." To each of these charges the defendants separately excepted.

Handy Jordan asked the court, in writing, to instruct the jury, "that on the evidence introduced in this case, Handy Jordan can not be convicted of any thing under the first

count in the indictment." The court refused to give this charge, and Handy Jordan excepted.

Jule Jordan requested the court, in writing, to instruct the jury, "that the jury, under the evidence in this case, can not convict Jule Jordan of anything under the second count in the indictment." The court refused this charge, and Jule Jordan excepted.

THOS. H. WATTS, Jr. and ALEX. TROY, for the appellants.

THOS. N. McCLELLAN, Attorney-General, for the State.

STONE, C. J.—When this case was before us on a former day of this term, the testimony shown by the record was, that after receiving the wound of which he died, deceased "said repeatedly he thought he would die." Deceased then made a statement, which was offered in evidence as a dying declaration. The trial court admitted the evidence. We ruled there was no error in this. Our opinion was, that it sufficiently appeared the declaration was made under the conviction of impending death.—*Jordan v. State*, 1 So. Rep. 577; s. c., 81 Ala. 20.

The testimony of the same witness, as found in the present record, was that deceased said, "he did not think he would get well." Immediately after this, he made the statement—repeated several times afterwards—which was again proved as a dying declaration, against the objection and exception of defendants. This statement was made by deceased about two hours after he received the mortal wound, and when that wound and its probable effect were the subject of conversation. The wound was a pistol shot, passing substantially through his body from right to left.

Spoken as the words were in this case, and having reference to the wound which proved fatal soon afterwards, we think there is no material difference between the two expressions, "he thought he would die," and "he did not think he would get well." Not to get well, as he intended to be understood, meant that he thought he would die of the wound.— *Rex v. Reany*, 40 Eng. L. & Eq. 552; *Jordan v. State, supra*; *Walker v. State*, 52 Ala. 192; *May v. State*, 55 Ala. 39; *Kilgore v. State*, 74 Ala. 1; *Wills v. State, Ib.* 21; *Ward v. State*, 78 Ala. 441.

2. Handy Jordan cut the deceased with a knife, and almost immediately Jule Jordan shot him with a pistol. Both wounds were inflicted in one rencontre. There was some testimony that Handy aided and abetted Jule in the encounter. That he was present, and engaged in the fight

[Tatum v. The State.]

on Jule's side, can not be denied. That he employed a dangerous weapon, can not be disputed. Hence, any charge which assumed that either defendant did not aid or abet the other, or that the two Jordans acted without common purpose, would have been an invasion of the province of the jury. It is not necessary to the guilt of either, that there should be positive proof of a common purpose, previously formed. If it be shown that the killing was unlawful, the fact that the mortal wound was the work of only one of the defendants, does not excuse the other, if he was present, aiding, abetting, or encouraging the unlawful act. Each would be guilty of the homicide.

In giving the charges requested, and in refusing the charges asked, the City Court conformed strictly to these rules.—*Jordan v. State*, 79 Ala. 9; *same v. same*, 1 So. Rep. 577.

Affirmed.