# McQueen *v.* The State.

## *Indictment for Murder.*

1. *Special venire in capital case; repeating name of juror.*—In a special *venire* in a criminal case, if the name of one of the regular jurors for the week is repeated as one of those specially summoned, thereby making the whole number one less than ordered, this is good ground for quashing the *venire*.

2. *Dying declarations.*—When it is shown that the deceased, having received a gun-shot wound, died on the next day, and that he said to the person who first went to his assistance, and to whose house he was carried, "I want you to do all you can for me; I believe, I don't think I will live:" a sufficient predicate is laid for the admission of his dying declarations.

3. *Admissibility of confessions.*—Confessions voluntarily made are admissible as evidence, though made while the defendant is under arrest, and to the officer who has him in custody.

4. *Argumentative charges* are properly refused; but giving such a charge is not ground of reversal in a criminal case, unless it appears to have misled the jury.

FROM the Circuit Court of Butler.

Tried before the Hon. JOHN P. HUBBARD.

The defendant in this case, Peter McQueen, was indicted for the murder of Ab Chambers, by shooting him with a gun; was convicted of murder in the second degree, and sentenced to the penitentiary for the term of 25 years. Before entering on the trial, the defendant submitted a motion to quash the special *venire*, and excepted to the overruling of his motion. The opinion states the facts on which the motion was based. The evidence adduced on the trial showed that the deceased was shot by the defendant, about eleven or twelve o'clock one night during Christmas week, 1889, and died the next day from the effects of the wound; that the parties had been attending a gathering, called a "ball," at the house of Bert Kimball, and a difficulty there occurred between the defendant, the deceased and one Liney Hamilton, in which the defendant was cut by one or both of them; that he ran out of the back door of the house, picking up a shot-gun which had been left standing there by Hamilton; that this difficulty broke up the gathering, and everybody left; that the defendant encountered the deceased and Hamilton about an hour afterwards, and fired the fatal shot; that the defendant went back to Kimball's house, admitted that he had fired the shot, and said that he

"would shoot anybody who tried to cut him for nothing."
Kimball at once went to the spot, 150 yards or more from the
house, found the deceased lying on the ground badly wounded,
and helped to carry him back to the house, where he died the
next day. Kimball testified, "I had no conversation with him
about dying." He was then asked, "What the deceased said
about dying," and answered: "He said, '*I want you to do all
you can for me; I believe, I think I wont live.*'" On this
testimony, the State asked that the declarations of the de-
ceased be admitted in evidence, which were to the effect:
"that he did not believe Peter aimed to shoot him, but knew
he was after Liney." The court admitted these declarations
as evidence, against the objection and exception of the de-
fendant.

The defendant was arrested by one Perdue, a policeman,
who testified that he asked defendant, after his arrest, "why
he shot the man;" that defendant replied, "They were cutting
him," or "had been cutting him;" and that this statement
"was voluntary." The sheriff of the county, also a witness
for the prosecution, testified to confessions made to him by
the defendant while in his custody, and said that the state-
ments "were voluntary—that he made no threats, and offered
no inducements;" but he further testified, on cross-examina-
tion, that defendant "said nothing except in answer to questions
propounded by him." The defendant objected to the confes-
sions detailed by each of these witnesses, on the ground that
they were not shown to be voluntary; and he excepted to
their admission. The confessions to the sheriff were the same,
in substance, as those to Perdue.

The court gave the following charges to the jury, at the in-
stance of the State: (1.) "Premeditation means determined
on beforehand; but the required operation of the mind, the
reflection and premeditation, may take place in the shortest
interval of time, even at the moment of committing the act,
as well as a month beforehand; and, like any other fact, it
may be proved by circumstantial evidence which excludes
every reasonable doubt." (2.) "A doubt which requires an
acquittal, must be actual and substantial, not mere speculation
or possibility: it is not a mere possible doubt, because every-
thing relating to human affairs, and depending on moral evi-
dence, is open to some possible or imaginary doubt."

The defendant excepted to each of these charges, and also
to the refusal of the following charge, which was asked by
him in writing: "Unless the jury are convinced by the evi-
dence beyond all reasonable doubt that the killing of the de-
ceased by the defendant was *willful*—that is, governed by the

will, without yielding to reason; *deliberate*—that is, formed with deliberation, in contradistinction to a sudden and rash act; *malicious*—that is, with fixed hate, or done with wicked motives or intentions, not the result of sudden passion; and *premeditated*—that is, contrived or designed previously,— then they can not find the defendant guilty as charged in the indictment."

GAMBLE & POWELL, for appellant, cited *Roberts v. State*, 68 Ala. 515; *Darby v. State*, 92 Ala. 9; *Ward v. State*, 78 Ala. 441; *Kilgore v. State*, 74 Ala. 1.

WM. L. MARTIN, Attorney-General, for the State.

CLOPTON, J.—In *Darby v. State*, 92 Ala. 9; 9 So. Rep. 429, it was decided, that when the presiding judge draws from the jury-box the name of fifty persons, and orders them to be summoned to appear on the day set for the trial of a capital case, and a copy of the list of the names so drawn, with the list of the regular jurors drawn and summoned for the week, to be served on the defendant, he is entitled to the full number; and if one whose name is drawn and put on the special *venire*, is also on the regular panel for the week, the defendant is deprived of his right to the full number ordered, and it is good ground for quashing the *venire*. The motion to quash the *venire* in the present case is made on the same ground as in *Darby's case*, and the facts in the two cases, the name of the juror being changed, are identical. On the authority of that case, the motion to quash the *venire*, which was made in due time, should have been granted.

It is unnecessary to consider the exceptions to the refusals of the court to send, while the jury was being impannelled, for the special jurors who were serving on the grand jury. A like proceeding will not probably occur on another trial.

The deceased was wounded in the back, a little to the left of the spinal column, and near the lower end of the spine; it was a gun-shot wound, the deceased dying next day. The evidence shows, that he said to the witness, "I want you to do all you can for me; I believe, I don't think I will live." The circumstances, and the statement of the deceased to the witness, *prima facie* show that he was under a conviction of approaching death, and had lost hope of recovery. A sufficient predicate was laid to admit the dying-declarations, leaving to the jury to consider the circumstances under which they were made in determining the weight which should be given to them.—*Jordan v. The State*, 82 Ala. 1; *Ward v. State*, 78 Ala. 441.

[Johnson v. The State.]

The ruling as to the admissibility of the confessions of defendant in evidence, is in accord with the decisions of this court. It is affirmatively shown that the confessions were not made under the influence of threats, promises, or other improper inducements, but were voluntary. The mere fact that the defendant was under arrest, and made the confessions in answer to questions propounded to him by the officer having him in custody, does not render them inadmissible. *Spicer v. State*, 69 Ala. 159.

The charge requested by defendant is argumentative, and for this reason, if no other, was properly refused. The same observation is applicable to the first two charges requested by the State; but the giving of an argumentative charge will not operate to reverse the judgment, unless it appears to have misled the jury.

For the error in refusing to quash the *venire*, the judgment is reversed.

Reversed and remanded.