# Gibson v. The State.

*Indictment for Manslaughter.*

126   59
128   26

126   59
140   28

1. *Evidence; admission of dying declarations.*—On a trial under an indictment for manslaughter, where two witnesses testified that shortly after the deceased was shot he made the following statements to the witnesses: "I do not think I can live long, I am going to die," such testimony is a sufficient predicate for the introduction as dying declarations of statements made immediately thereafter by the deceased, as to who shot him.

2. *Same; charge to the jury; properly refused when ignoring freedom from fault.*—On a trial under an indictment for manslaughter, where the evidence for the defendant tends to show that he was in his own house at the time of the shooting, and the deceased was coming up the front steps of the house with a knife drawn, when the pistol shot was fired, a charge is erroneous and properly refused which instructs the jury "that if, after looking at all the evidence in this case, your minds are kept in such a state of uncertainty that you can not say beyond a reasonable doubt whether the defendant acted upon the well grounded and reasonable belief that it was necessary to shoot and take the life of Monroe Simmons to save himself from great bodily harm or from death, or that he shot before such impending necessity arose, then this is such a doubt as will entitle the defendant to an acquittal;" such charge ignoring the question as to whether or not the defendant was free from fault in bringing on the difficulty.

3. *Same; same; same.*—In such a case, a charge is erroneous and properly refused which instructs the jury "that if you believe from the evidence that Monroe Simmons, the deceased, was repeatedly ordered to leave the house of defendant and he failed and refused to do so and after being ordered to leave by the defendant or he would put him away, the deceased pulled his knife and ad-

vanced towards the defendant with his knife open and the de-
fendant shot him, then the defendant was free from fault in
bringing on the difficulty;" since such charge withdraws from
the jury a consideration of all the other evidence in the case,
from which they might have inferred that the defendant was
at fault in bringing on the difficulty.

APPEAL from County Court of Cleburne.

Tried before the Hon. T. J. BURTON.

The appellant, Bud Gibson, was tried under an in-
dictment charging him with manslaughter for the kill-
ing of one Monroe Simmons, was convicted of man-
slaughter in the second degree and sentenced to hard
labor for the county.

The evidence introduced upon the trial was without
material conflict and tended to show the following facts:
Monroe Simmons went to the home of Bud Gibson on
the 23d of December, 1899, and at the door called for
his, Simmons', wife, who was sitting on the inside by the
fire. She refused to go to him, and after her refusal to
go, the deceased became talkative and was ordered away
from the house by both Lizzie Gibson and Bud Gibson,
but he refused to leave. The wife of the deceased also told
him in the presence of defendant, her brother, that he
(the deceased) had beaten her a few days ago before
with a bed slat and had also said that he wanted to get
one lick at the defendant. The defendant's mother,
Lizzie Gibson, went to the door and repeatedly com-
manded the deceased to leave, and after his refusal to go
down off of the steps, the defendant told his mother to
knock the deceased away, to which the deceased replied:
"You would better do it," and defendant getting up out
of his chair said to deceased, "I can do it," and walked
towards the door with an ax handle in his hand, which
he gave to his mother upon being requested to do so by
her. The defendant's mother then pushed the deceased
off of the steps to the ground, and then deceased pulled
his knife and opened it and began to advance upon the
defendant. The defendant took his gun from the rack
above the door and told the deceased not to come on
him with that knife, and while the deceased was ad-
vancing on the defendant the defendant shot him in the
side.

The deceased went around the house and the defendant fired another shot out of the other door. There was evidence of a previous difficulty at the defendant's house about a week before this shooting, and the defendant then and there ordered the deceased not to come back to his house drinking and cursing. There was also evidence that the deceased had made threats to whip the defendant, which threats had been communicated to the defendant before the shooting. There was evidence that the deceased was drinking at the time of the difficulty. The defendant was shown by the evidence to have a good character for peace and quietude.

It was further shown by the evidence that after Monroe Simmons was shot by the defendant he was carried to a house a short distance from the place where the shooting occurred. One Ivey, a witness for the State, testified that upon going to the house where Monroe Simmons was carried, after he was shot, he found him lying on the floor; that he seemed to be suffering, and prayed for a long time; that he turned to him and said that "he was going to die, and wanted to tell" who shot him. Upon this witness being asked who deceased said shot him, the defendant objected to the question upon the ground that it called for a dying declaration, and no sufficient predicate had been laid. The court overruled the objection and the defendant duly excepted. The witness answered that Simmons said to him that Bud Gibson shot him.

During the examination of one Robert Chandler as a witness for the State, he stated that he saw the deceased Monroe Simmons in the house where he was killed, after he was shot, and that in conversation with him the witness, he said Simmons told him that he did not think he could live long, and said: "I am going to die." This witness was then asked to state what Monroe Simmons said to him about the shooting. The defendant objected to this question on the ground that it called for a dying declaration, and a proper predicate had not been laid therefor. The court overruled the objection and the defendant duly excepted. The witness answered that upon his asking Monroe Simmons who shot him, he stated that Bud Gibson shot him.

Upon the introduction of all the evidence the defendant requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked: (3) "The court charges the jury that if, after looking at all the evidence in this case, your minds are left in such a state of uncertainty that you can not say beyond a reasonable doubt whether the defendant acted upon the well grounded and reasonable belief that it was necessary to shoot and take the life of Monroe Simmons to save himself from great bodily harm or from death, or that he shot before such impending necessity arose, then this is such a doubt as will entitle the defendant to an acquittal." (13) "The court charges the jury that if you believe from the evidence that Monroe Simmons was repeatedly ordered to leave the house of defendant and he failed and refused to do so, and after being ordered to leave by the defendant or he would put him away, the deceased pulled his knife and advanced towards the defendant with his knife open and the defendant shot him, then the defendant was free from fault in bringing on the difficulty."

MERRILL & MERRILL, for appellant, cited *Simpson v. State,* 59 Ala. 1; *Fuller v. State,* 115 Ala. 61; *Naugher v. State,* 105 Ala. 26; *Harris v. State,* 96 Ala. 24; *Justice v. State,* 99 Ala. 180; *Blackburn v. State,* 98 Ala. 63.

CHAS. G. BROWN, AttorneyGeneral, for the State, cited *Johnson v. State,* 102 Ala. 15; *McQueen v. State,* 103 Ala. 12; *Sullivan v. State,* 102 Ala. 142; *State v. Black,* 8 So. Rep. 594; *McQueen v. State,* 94 Ala. 50; *Jordan v. State,* 82 Ala. 1.

DOWDELL, J.—On the testimony of the witnesses Ivey and Chandler, the statements made by the deceased to these witnesses in regard to the shooting from which his death resulted, were admissible in evidence as dying declarations.—*McQueen v. State,* 103 Ala. 12; *McQueen v. State,* 94 Ala. 50; *Jordan v. State,* 82 Ala. 1.

Charge No. 3 refused to the defendant, if it were faulty in no other respect, is bad in that it pretermits the doctrine of freedom from fault. As was forcibly said by this court in the case of *Watkins v. State,* 89 Ala. 88, 89, a man's house is "his castle for purposes of defense. It cannot be turned into an arsenal for the purpose of offensive efforts against the lives of others. He cannot justify under a necessity which his own fault or wrong has contributed to produce." There was evidence tending to show that the defendant was not free from fault and wrong which contributed to produce the necessity for him to shoot, if it can be said that such necessity existed.

The court very properly refused charge No. 13 requested by the defendant. This charge instructs the jury upon the facts postulated to find that the defendant was free from fault. The jury might find every fact hypothesized in the charge to be true, and yet find from other facts in evidence that the defendant was not free from fault in bringing on the difficulty. The charge withdrew from the jury the consideration of all the other evidence and from which they might have inferred that the defendant was at fault.

We find no error in the record, and the judgment of the court must be affirmed.

