# Askew v. The State.

## *Indictment for Murder.*

1. *Self-defense; protection to dwelling or business house; intoxication of assailant.*—When a person is assailed in his own house or place of business, not having provoked the assault, he is under no obligation to retreat therefrom in order to avoid a difficulty, but is bound to exercise reasonable care to prevent the necessity of taking life, and to employ no more force than is sufficient to repel the threatened danger to his life or person; and this general rule is not modified, nor a greater degree of care imposed upon him, because he knows that his assailant is intoxicated to an extent which impairs his physical energies, and renders him less dangerous; though this may be a fact for the consideration of the jury in determining whether there was a present pressing necessity, real or apparent, to take the life of the assailant.

2. *Same; charge as to belief of necessity to take life.*—A charge which claims an acquittal, if the jury find that the defendant fired the fatal shot, "believing that unless he did so G. [deceased] would cut him," is properly refused, since it ignores the existence, real or apparent, of reasonable grounds for such belief

3. *Reading reported cases.*—In a criminal case, the court may refuse to allow counsel to read to the jury the printed report of the facts of another case as officially published; but, when the defendant's counsel has read to the court, during his argument, the opinion in another case officially reported, the solicitor may, in reply, read to the court the facts of that case as shown by the printed report.

FROM the Circuit Court of Henry.

Tried before the Hon. JESSE M. CARMICHAEL.

The defendant in this case, Thomas C. Askew, was indicted for the murder of Ned Grice, by shooting him with a pistol; was convicted of murder in the second degree, and sentenced to the penitentiary for the term of twelve years. The evidence on the trial showed that the killing occurred in the defendant's livery-stable in the town of Dothan, on the 14th April, 1891; that he and the deceased were personal friends;

that they met on the street, the deceased being, as a witness expressed it, "considerably under the influence of liquor— drunk I would call it;" that the defendant, assisted by one Ben Whiddon, carried the deceased to the livery-stable, holding him up and supporting him on each side; that he and the deceased, on reaching the stable, fell down together on a bed in the front room, and seemed to be "tussling" for some time; that the defendant soon arose, and helped the deceased to pull a bottle of whiskey out of his pocket; that he called the attention of the deceased to the fact that the stopper had fallen out of the bottle, whereupon deceased said, "I've got something else." and pulled a pistol out of his hip-pocket; that the defendant, with the assistance of the bystanders, took the pistol away from him, and walked to the rear of the stable; that the deceased followed, "*kinder staggering*," as one witness expressed it, and pulled his knife out of his pocket; that he caught the defendant by the collar, and demanded his pistol, but was pulled away by a bystander; that he again advanced on the defendant, holding his knife in his hand, and was several times warned to stop; that the defendant fired above his head as he again advanced, and at the second shot struck and killed him.

The above being "in substance all the evidence before the jury," the court gave a charge to the jury, to which the defendant excepted, and which is set out in the opinion of this court; and he also excepted to the refusal of the following charge, which was asked by him in writing: "If the jury are reasonably satisfied from the evidence that Askew, when he shot Grice, did it believing that unless he did so Grice would cut him, then they will find the defendant not guilty, unless they further believe from the evidence that Askew brought on the difficulty; and if the evidence shows that Askew merely carried Grice to his stable to take care of him, and in doing so only took his pistol from him to prevent him from doing injury to himself or any other person present, then he did not bring on the difficulty."

"In discussing the legal questions involved, the defendant's counsel read to the court certain portions of the decisions in the cases of *Ingram v. State*, 67 Ala. 67, and *Brinkley v. State*, 89 Ala. 34, but did not read any of the facts in said cases as reported. In his closing argument, replying to the argument of the defendant's counsel, the solicitor offered to read to the court, in the presence of the jury, the facts in said cases as reported; and the court allowed this to be done,

[Askew v. The State.]

against the objection and exception of the defendant, but stated to the jury that they should not consider the facts in said cases for any purpose."

ROBERTS & MARTIN, for appellant.

WM. L. MARTIN, Attorney-General, for the State.

PER CURIAM.—The evidence showing, without dispute, that the killing occurred in a livery-stable of which the defendant was proprietor, and that the deceased was intoxicated at the time, the court, after stating the general proposition, that if the defendant was in his own place of business, he was under no obligation or duty to retreat therefrom to avoid a difficulty, proceeded to further instruct the jury, in substance as follows:   But, if the deceased was intoxicated, and in consequence thereof was less prudent, and his power of locomotion and action was so impaired as to render him less dangerous than he otherwise would have been, and this was known to defendant, "then it was his duty to exercise reasonable care to avert a difficulty with the deceased, unless by the exercise of such care he would have apparently increased his danger; and if the defendant failed to exercise such reasonable care, and if it could have been done without increasing his danger, then the defendant is not without guilt, if he shot and killed the deceased."

The ascertainment of the proper construction and legal effect of the charge, when referred to the evidence, is preliminary and essential to determining its correctness.   The first inquiry is, what is meant by the expression, that it was the duty of defendant "to exercise reasonable care to avert a difficulty," and to avoid the necessity of killing, unless, by the exercise thereof, he would have apparently increased his danger, in the manner and connection in which it is employed in the charge?   When a person is assailed without the precincts of his dwelling or place of business, it is his unquestionable duty to use all the means in his power to avert the difficulty. and to avoid the necessity of taking life, if there be any mode of escape or retreat with reasonable safety.   Also, notwithstanding he may be attacked in his dwelling or business house, it is his duty to refrain from taking life unless there is imminent and pressing necessity, real or apparent; he must take care to employ no more force than is sufficient to repel the danger to his life, or the apprehended grievous injury to his person.   In these two respects alone can the duty to exercise reasonable care arise in cases of voluntary homicide, not

[Askew v. The State.]

the consequence of criminal negligence, when the accused is without fault in bringing on or provoking the difficulty. The expression therefore, "to exercise reasonable care," though not strictly accurate, must have been employed with reference to one or both of these respects. There being no evidence tending to show that defendant was at fault, and the evidence showing that the deceased was the assailant, whether there existed a real or apparent necessity, and a reasonable mode of escape, were the only issues involved and tried. In view of these issues, the charge was intended to assert the principles on which the defendant could set up the excuse of self-defense, when he was assailed in his own place of business by a drunken man.

The precise subject of the charge is the duty to retreat; this is apparent from the fact, that it begins with a statement of the general rule as to the duty of defendant to retreat from his place of business. After stating this general rule, the charge proceeds to lay down, by way of distinction, as it were, a rule in respect to the duty of exercising reasonable care to avert the difficulty, as specially applicable when the assailant is intoxicated to the degree hypothesized. When the charge is construed as an entirety, and in reference to the evidence—when the different parts are considered in connection, and in relation to each other—the legal effect of the latter part is to limit, or modify, when the assailant is intoxicated, the application of the general rule stated in the first clause; otherwise the qualifying phrase, "unless by the exercise of such care he would have apparently increased his danger," is without meaning and effect. Such may not have been the intention of the court, but it was probably so understood by the jury. A similar charge was so construed in *Brinkley v. State*, 89 Ala. 34. In that case, the killing occurred in the house of defendant. The court gave the following charge : "That if the defendant could have avoided the difficulty without danger to himself, he should have done so." This charge was held to be erroneous, for the reason, that it assumed that the defendant was bound to retreat from his house, and also to yield the right to order the deceased from his premises on account of profanity and indecent behavior, as a mode of avoiding apprehended violence. Though differing in phraseology, there is no difference in principle between the charge in that case and the charge under consideration. Unless the meaning and legal effect of the charge is to constitute the drunken condition of the deceased an exception to the general rule in regard to the duty to retreat from one's dwelling or

[Askew v. The State.]

business house, it is intrinsically inconsistent; the charge making no allusion to any other mode of exercising reasonable care.

It may be that the intoxication of the deceased was a circumstance to be considered by the jury in determining whether there was apparently a present, pressing necessity for defendant to take the life of the deceased, to protect his own, or to prevent great bodily harm. But, voluntary intoxication did not deprive defendant of the right to defend himself against violent assault. The conduct of a person in a state of voluntary intoxication is subject to the same rules and principles as the conduct of a sober man.—*Nichols v. Winfrey*, 90 Mo. 403.

The charge is defective in that it ignores the evidence showing that the killing occurred in the defendant's place of business, and assumes that, if the deceased was intoxicated to a degree rendering him less prudent, and so impairing his physical faculties as to render him less dangerous, it was the duty of defendant to retreat therefrom, as a mode of exercising reasonable care to avert the difficulty, and avoid the necessity of taking his life, if his danger would not be apparently increased thereby.

The charge requested by the defendant was properly refused, because it bases the right to kill the deceased upon his mere belief that unless he did so the deceased would cut him, without the predicate of reasonable grounds for the belief. The circumstances must be such as would create in the mind of a reasonably prudent man the belief that such necessity existed.

The defendant also excepted to the court permitting the solicitor to read the facts in certain reported cases. It appears that the defendant's attorney, in discussing the legal questions, read to the court certain portions of the opinions rendered in those cases; and thereupon the solicitor read to the court the facts as reported. The solicitor may have deemed this necessary to show that the principles of law announced in the opinions were not applicable to this case. The court stated to the jury that they should not consider the facts read from the cases referred to. Under the circumstances, we can not say there was error in this. It does not come within the principle declared in *Williams v. State*, 83 Ala. 68.

Reversed and remanded.

The opinion in this case was prepared by the late Judge CLOPTON, and was handed down by the court on the 25th February, 1892, a few days after his death.