# Maxwell *v.* The State.

## *Indictment for Murder.*

1. *Homicide; admissibility of evidence.*—On a trial under an indictment for murder, where circumstances are proven tending to show defendant's guilt, and there is evidence of defendant's flight after the killing, it is competent for the sheriff who arrested the defendant next day after the homicide to testify that upon making the arrest he found a pistol in the possession of the defendant in his coat pocket, such pistol being fully identified as the one with which the defendant shot the deceased.

2. *Same; same.*—On a trial under an indictment for murder, where the evidence shows that the killing occurred in a house occupied by the defendant, after a witness had testified that the defendant was using the house for a residence and grocery, it is competent for the State, on cross-examination of said witness, to ask him, "What kind of business the defendant was doing in that house?" and the answer of the witness that "Defendant was selling cigars, beer and whiskey," is also admissible in evidence.

3. *Same; same.*—In such a case, it is competent to ask such witness "what the defendant was doing behind the counter," in the house where the killing occurred, and the answer of such witness "that he was putting out glasses and bottles of beer," is admissible in evidence.

4. *Same; same.*—In such a case, it is also competent to ask such witness on cross-examination "if the parties were paying for the beer and whiskey," and his answer that they were, is admissible in evidence.

5. *Same; same.*—In such a case, it being shown that the killing occurred on Sunday morning, it is not competent for the State to ask a witness who had testified to seeing the defendant present at the house the Sunday morning of the killing, to further ask him whether or not he saw the defendant sell beer and whiskey on said Sunday morning; and the testimony of witnesses that they knew of the sale of whiskey by the defendant on said Sunday morning, is irrelevant to any issue in the case, and, therefore, inadmissible.

6. *Same; same.*—On a trial under an indictment for murder.

[Maxwell v. The State.]

where the defendant as a witness in his own behalf had testified that he had been informed of threats made by the deceased against him, that he had been at the place where the deceased lived but a short time and had left and then returned a few days before the killing, it is competent for the State to ask the defendant on cross examination where he came from when he came to the place where the killing occurred.

7. *Same; same.*—On a trial under an indictment for murder, where the defendant's evidence tended to show that the deceased made threats against the defendant which were communicated to him, it is competent for the State, on the examination of one of the witnesses in rebuttal, to ask him whether or not the defendant was a resident of the place where the deceased lived when the killing occurred; such evidence having a tendency to show that there was no motive in the deceased making threats against the defendant.

8. *Same; same.*—On a trial under an indictment for murder, where the defendant had already proven that the deceased was a dangerous blood-thirsty man when drinking there is no error in refusing to allow him, subsequently, to make additional proof of such fact; the question of his being such a man not being disputed.

9. *Same; charge to the jury.*—One who is the aggressor, or who is at fault in bringing on the difficulty with another in his own house, can not, after slaying his adversary, claim in self-defense that he was under no duty to retreat from his castle; and, therefore, a charge is properly refused which instructs the jury that "If the defendant had the house rented and occupying it as his store at the time of the killing of the deceased, this is regarded as much the domicile and castle of the defendant as though the defendant owned the house absolutely; and if the defendant was assaulted in this house, he did not have to retreat for the defendant had the protection of his house to excuse him from flying; and the law does not require him to fly from his house, and give up the protection of his house to his adversary by flight," said charge ignoring the question as to whether the defendant was at fault in bringing on the difficulty.

APPEAL from the Circuit Court of Bibb.

Tried before the Hon. JOHN MOORE.

The appellant, John Maxwell, was indicted and tried for the murder of Pat Finnon, was convicted of mur-

[Maxwell v. The State.]

der in the first degree and sentenced to the penitentiary for life.

The evidence for the State tended to show that between 8 and 9 o'clock Sunday morning, on November 26, 1899, John Maxwell killed Pat Finnon by shooting him with a pistol; that the shooting occurred in Maxwell's store; that just before the killing, Finnon ,the deceased, one McMahon and the defendant were boxing with each other, and after they finished boxing Finnon was standing on the right of Maxwell and told two or three people who were in said store that he could whip both McMahon and the defendant and bragged about what a good man he was; that he then turned to a keg in said store upon which there was lying a pistol, and that thereupon the defendant Maxwell picked up the pistol and told him to stand back, at the same time firing said pistol at Finnon, inflicting wounds from which he died; that at the time of the difficulty, Finnon was under the influence of whiskey, McMahon was drinking and the defendant had been drinking. It was further shown by the evidence that the house where the killing occurred contained two rooms, the larger room being used by the defendant Maxwell as a store room and the smaller room used by him as a sleeping room. The evidence for the State further tended to show that after the defendant shot the deceased he left the store and was arrested the next day by the sheriff of the county, Robert Vance, between Blocton and Centreville, the shooting having occurred at a small town a short distance from Blocton.

The evidence for the defendant tended to show that on the morning of the killing, after the deceased, McMahon and the defendant had been boxing, the defendant proposed to close up the store and go to town and walked back to a keg where his pistol was lying and picked it up; that thereupon Finnon walked up to the defendant and cursed him and demanded that he give him the pistol, telling him that if he did not he would "cut his heart out;" that Finnon ran his hand in his inside coat pocket, where the defendant had seen him put a large dirk before the boxing began, and

that while Finnon was so reaching in his pocket, the defendant fired and killed him; that the deceased was drinking at the time, and there was evidence introduced which showed that the deceased was a dangerous, blood-thirsty man when he was drinking. The defendant introduced further evidence tending to show that the deceased had made a number of threats to kill the defendant, all of which had been communicated to the defendant before the killing; that about fifteen minutes before the difficulty which resulted in the killing the deceased was seen with a large dirk in his hand, and that he said he was going to kill defendant, and then put the dirk in his inside pocket. It was further shown that the house where the shooting occurred was occupied by the defendant who used a large room for store and the small room for his sleeping apartment.

During the examination of Robert Vance, as a witness for the State, and after he had testified that he was the sheriff of Bibb county, and had arrested the defendant the day after the killing, and that upon arresting him he had taken a pistol from the defendant, which pistol he identified as being the one offered in evidence, the solicitor then asked said witness: "Where he got the pistol from?" The defendant objected to this question, because it called for illegal, irrelevant and incompetent evidence. The court overruled the objection, and the defendant duly excepted. The witness then answered that he got the pistol from the defendant's inside coat pocket.

M. B. Sims was introduced as a witness for the defendant, and during his examination he testified that the house in which the shooting occurred "was used as a dwelling house and grocery." The solicitor then asked the following question: "What kind of business was the defendant doing in that house?" The defendant objected to this question upon the ground that it called for immaterial, irrelevant and illegal evidence. The court overruled the objection, and the defendant duly excepted. The witness then answered: "That the defendant was selling cigars, beer and whiskey." The defendant moved to exclude this answer upon the ground

that it was immaterial, irrelevant and illegal evidence, and duly excepted to the court's overruling his motion. This witness further testified that he was in the house at the time of the shooting and that Maxwell was behind the counter just before the shooting. Thereupon the witness was asked what Maxwell was doing behind the counter? The defendant objected to this question upon the ground that it called for immaterial, irrelevant and illegal evidence. The court overruled the objection, and the defendant duly excepted. The witness answered that Maxwell was putting out glasses and bottles of beer. The defendant moved to exclude this evidence upon the same grounds as were interposed to the question, and duly excepted to the court's overruling his motion. The solicitor then asked said witness: "If the parties were paying for the beer and whiskey?" The defendant objected to this question upon the same grounds and duly excepted to the court's overruling his objection. Upon the witness answering that they did pay for it, the defendant moved to exclude said answer, and duly excepted to the court's overruling said motion. The solicitor then asked the witness the following question: "Did you see the defendant sell any beer and whiskey the Sunday morning of the killing?" The defendant objected to this question upon the ground that it called for irrelevant, immaterial and illegal evidence. The court overruled the objection, and the defendant duly excepted. Upon the witness answering that he did see the defendant sell beer on the Sunday morning of the killing, the defendant moved to exclude the answer upon the same grounds, and duly excepted to the court's overruling the motion.

During the examination of C. W. Cummings as a witness, and after he had testified that he saw Maxwell at his house the morning Finnon was killed, the solicitor asked said witness the following question: "Did you buy anything from Maxwell that Sunday?" The defendant objected to this question, because it called for immaterial, incompetent and illegal evidence, and because defendant was not on trial for violating

[Maxwell v. The State.]

the prohibition law or the Sunday law. The court over-ruled the objection, and the defendant duly excepted. Upon the witness testifying that he "bought a pint of whiskey from Maxwell on that Sunday morning," the defendant moved to exclude said answer upon the same grounds, and duly excepted to the court overruling said motion.

During the examination of Monroe George, the so-licitor asked him "If he saw any one buy any whiskey the morning of the difficulty?" The defendant objected to the question upon the same grounds as interposed to the preceding questions, and duly excepted to the court overruling his objection. The witness answered that "he bought some whisky from defendant that morning, and saw others buy it also." The defendant moved to exclude this answer on the same grounds, and duly excepted to the court overruling his motion. The other facts of the case pertaining to the rulings of the trial court upon the evidence, reviewed on the pres-ent appeal, are sufficiently stated in the opinion.

Upon the introduction of all the evidence the defend-ant requested the court to give, among others, the fol-lowing written charge, and separately excepted to the court's refusal to give the said charge as asked:  (3.) "If the defendant had the house rented and occupying it as his store at the time of the killing of the de-ceased, this is regarded as much the domicile and castle of the defendant as though the defendant owned the house absolutely; and if the defendant was assaulted in this house he did not have to retreat for the defend-ant had the protection of his house to excuse him from flying, and the law does not require him to fly from his house and give up the protection of his house to his ad-versary by flight."

ELLISON & THOMPSON, for appellant.—The court erred in allowing the solicitor to ask the witness Vance where he got the pistol when he arrested the defendant.—*Gas-senheimer v. State,* 52 Ala. 318; *Brock v. State,* 26 Ala. 106; *Hobbs v. State,* 75 Ala. 5; *Martin v. State,* 104 Ala. 77.

[Maxwell v. The State.]

The court erred in allowing the State to make proof of the fact that the defendant was selling beer and whiskey on the Sunday morning of the killing. It is well settled as a general proposition that upon the trial of an indictment for one offense, evidence of another distinct offense, though of similar nature, is inadmissible.—*Ingram v. State*, 39 Ala. 251; *Gassenheimer v. State*, 52 Ala. 318; *Brock v. State*, 26 Ala. 106; *Martin v. State*, 104 Ala. 77; Wharton's Criminal Evidence, §§ 29, 30.

CHAS. G. BROWN, Attorney-General, for the State. The third charge asserted a correct proposition and should have been given at the request of the defendant. *Harris v. State*, 96 Ala. 27; *Jones v. Satte*, 76 Ala. 8.

HARALSON, J.—1. When the sheriff, Vance, arrested the defendant, the next day after he slew the deceased, he found a pistol in the possession of defendant, in his inside coat pocket. This pistol was fully identified as, and it was not denied that it was, the one with which defendant slew deceased. There was no error in overruling defendant's objection to the evidence, nor to the question which elicited it. Taken in connection with the other evidence in the cause, tending to show defendant's flight, and the circumstances showing his guilt, its effect was, even if slight, to shed light upon the transaction, leading the mind of the jurors, under all the evidence, to a just conclusion as to the character of the homicide.—*McAdory v. The State*, 62 Ala. 154, 159; *Liles v. The State*, 30 Ala. 24; *Campbell v. The State*, 23 Ala. 44; *Pentecost v. The State*, 107 Ala. 92.

2. On the same principle, the question asked the defendant's witness, M. B. Sims, on the cross-examination by the State, "What kind of business was defendant doing in that house?" was not improper. The witness had just stated, that the house in which the shooting occurred was used as a dwelling and grocery. The answer of the witness, "that the defendant was selling cigars, beer and whiskey," was but an amplification of

evidence just called for by defendant. If it was proper for defendant to prove by the witness, that he was using the house for a residence and grocery, it was not improper for the State to ask the nature and extent of its being so used.

3. Nor was it improper to ask said witness, "What Maxwell [the defendant] was doing behind the counter?"; and for him to answer that he was "putting out glasses and bottles of beer." This occurred at the time, or so nearly in point of time, to the shooting of the deceased by the defendant, as to be so contemporaneous with it, as that it may not be said that it does not tend to throw some light on the transaction and to show the relation of the parties.—*Barker v. The State*, 125 Ala. 69.

4. For like reason, it was not improper for the witness to be asked by the State, "If the parties were paying for the beer and whiskey?" and for him to answer that they were; but it was not competent for him to further state in reply to the question, calling for the answer, that he saw defendant sell beer on Sunday morning of the killing. Neither the question nor the answer named the time on Sunday morning when the selling took place. It may have been hours before the shooting, and totally disconnected with it.

What is here said as to the objection to the question to this witness and his answer thereto as to the sale of whiskey on Sunday morning, applies with equal force to the objection raised against the evidence of the witnesses Cunningham and George touching what they knew about the sale of whiskey by defendant on Sunday morning. It may be added, that the effect of such evidence was to prejudice the defendant in the minds of the jury as being a violator of the law prohibiting the sale of whiskey in Bibb county, or for selling it without a license (Acts, 1880-81, p. 187; Code, §§ 3521, 5076). He was not on trial for such offenses, nor for being a criminal apart from the offense for which he was being tried. The evidence was irrelevant to the issue in the case against defendant.

5. The defendant being examined for himself stated,

that he knew Finnon, the deceased, when he saw him; that he had been in his place (of business) about four times, the last time about three days before the killing; that he, defendant, had been at Blocton about three weeks before the difficulty; that he had left Blocton, just before the circuit court, and came back just afterwards, and was there, three weeks the last time; that one Peyton had told him, deceased was a dangerous man, and that he had "said [to Peyton] he was coming up there to run me off," and that he was informed that deceased had made threats against him to run him away or kill him, which threats, as the evidence tended to show, had been communicated to him.

The State was allowed against the objection of defendant, to ask him on the cross, "Where did you come from to Blocton?" and he answered from Mississippi. The defendant had just stated in his own behalf as seen, that he had been at Blocton but a short time, when he left just before court, and returned when court was over. We fail to see that there was error in allowing the State to ask him where he came from when he returned, for that was part of the *res gestae* of his return to Blocton, which fact he stated in his direct examination.

6. The State was allowed, against defendant's objection, to ask its witness, Brown, on the rebutting examination of witness, "Was Maxwell a resident of Blocton?" This evidence was admissible as tending to show, that deceased had no motive in threatening to run off or kill a stranger in the community, when no trouble or difficulty had been shown to have arisen between them, and as tending to show that he did not make the threats with which he was charged to have made.

7. The defendant having already proved that the deceased was a dangerous, blood-thirsty man, when drinking and when not drinking, there was no error in refusing to allow him, afterwards, further to cumulate proof that he was such a man when drinking. The question of his being such a man was not disputed.

8. Charge 3 requested by defendant was properly re-

[Caddell v. The State.]

fused, if for no other reason, for that it ignored any fault of defendant in bringing on the difficulty, which the evidence tended to establish. One who is the aggressor, or who is at fault in bringing on a difficulty with another, in his own home, cannot slay his adversary, and claim, thereafter, in self-defense, that he was under no duty to retreat from his castle.—*Askew v. The State*, 94 Ala. 4; *Christian v. The State*, 96 Ala. 89; *Naugher v. The State*, 105 Ala. 26; *Storey v. The State*, 71 Ala. 336.

For the errors indicated, the judgment and sentence of the court must be reversed, and the cause remanded.

Reversed and remanded.

## *Indictment for Murder.*

