# Gregory *v.* The State.

## *Indictment for Murder.*

1. *Organization of jury in capital case; when mistake in name does not authorize quashing venire.*—The fact that one person was drawn and summoned as a juror on a special venire drawn for the trial of a capital case and the sheriff summoned another person who had the same surname but different given name, and that the name of the person who was drawn was upon the list of the special venire served upon the defendant, constitutes no ground for quashing the venire.

2. *Homicide; admissibility of evidence.*—On a trial under an indictment for murder, where it is shown that the difficulty in which the deceased was killed resulted from a dispute between the defendant and the deceased about the children of the deceased having thrown rocks at the defendant's house, it is not competent, upon the cross-examination of a son of the deceased, to ask him had he been throwing rocks that day.

3. *Same; same.*—On a trial under an indictment for murder, where there had been introduced no independent evidence tending to show that the deceased, at the time of the killing, was intoxicated, it is not competent to ask the son of the deceased whether or not his father, on the day of the killing, had a jug of whiskey with him, or had carried one home that day; nor is it competent to ask the physician who attended the deceased, after he was shot, whether he discovered evidence of whiskey having been taken by the deceased.

4. *Dying declarations; when admissible in evidence.*—On a trial under an indictment for murder, where the deceased, after having been shot, stated that he was going to die, that it was only a question of time, that the wound which he had received would kill him, such statements show such a sense of impending death, that the statements made by the deceased immediately thereafter as to the circumstances of the difficulty in which he was shot, are admissible in evidence as dying declarations.

5. *Admissibility of evidence tending to contradict evidence given by State.*—On a trial under an indictment for murder, where witnesses for the State have testified to statements made by the deceased as dying declarations, the testimony of a physician who attended deceased after he was shot, which tends to contradict statements made by the deceased as testified to by the State's witnesses as dying declarations, is admissible.

6. *Homicide; admissibility of evidence.*—On a trial under an indictment for murder, it is immaterial as to whether or not the deceased was a constable at the time he was killed, and testimony of such fact is not admissible in evidence.

7. *Same; same.*—On a trial under an indictment for murder, it is not competent for the defendant to state why he had a pistol on the occasion of the difficulty with the deceased, in which the latter was shot.

8. *Impeachment of showing of absent witness; can be by proof of general character.*—While it is true that when a showing has been introduced for an absent witness, the opposite party will not be allowed to impeach such witness by proof of contradictory sta'ements, yet it is competent to impeach such witness by showing his general character.

9. *Homicide; admissibility of evidence.*—On a trial under an indictment for murder, where the daughter of the defendant testified that just as the deceased fell after being shot by the defendant deceased threw his pistol over into a field, it is competent for the State in rebuttal of such testimony, to introduce the testimony of a witness that the next morning after the shooting they went in such field, hunting for the pistol, and could not find it.

10. *Homicide; charge as to defendant's guilt.*—On a trial under an indictment for murder, a charge which instructs the jury that they "must find the defendant not guilty, if the conduct of the defendant upon a reasonable hypothesis is consistent with his innocence," asserts a correct proposition, and should be given at the request of the defendant.

APPEAL from the Circuit Court of Cullman.

Tried before the Hon. OSCEOLA KYLE.

The appellant in this case was indicted and tried for the murder of Bill Mann by shooting him with a pistol, was convicted of murder in the second degree and sentenced to imprisonment in the penitentiary for twelve years.

Before entering upon the trial the defendant moved the court to quash the special venire in the case upon the ground that one E. L. Garner, who was and is a *bona fide* citizen, householder and freeholder in the county of Cullman, was drawn and ordered summoned as a juror on said venire, but one T. J. Garner was summoned as a juror in his stead, and said E. L. Garner has not been summoned as a juror, that the name of E. L. Garner was on the list of the jurors served upon the defendant as a member of the venire from which to choose the jury to try his case. Upon the hearing of this motion, it was shown that the facts averred therein were true. The court overruled the motion, and to this ruling the defendant duly excepted.

On the trial of the case it was shown that the killing of the deceased, Bill Mann, occurred in the public road just a short distance from the defendant's house; that the deceased and his son, Henry Mann, were riding along the road in a buggy when the defendant came out of his yard and engaged in conversation with the deceased, which resulted in a quarrel, and upon the deceased getting out of his buggy, the defendant shot at him several times and inflicted several wounds, from the effects of which the said Bill Mann died; that when the defendant came up to where the deceased was in his buggy, he asked him to make his son stop throwing rocks at the house of the defendant, and that the difficulty which followed arose from a dispute between the deceased and the defendant, about the deceased's son having thrown rocks on the defendant's house.

The evidence for the State tended to show that as the deceased and his son were passing along the public road in their buggy in front of the defendant's house, the defendant hailed the deceased and told him to stop, and upon going up to him, he took the deceased to task about the deceased's son throwing rocks at the defendant's house, and told the deceased to get out of the buggy and they would settle it; and that just as the deceased got out of his buggy the defendant fired upon him; that the deceased was not armed and had made no hostile demonstrations towards the defendant.

The evidence for the defendant tended to show that during the quarrel between him and the deceased the deceased cursed him, and when he got out of his buggy he started towards the defendant in an angry manner and threw his hand to his pocket as if to draw a weapon, and that thereupon the defendant fired upon him; and that the deceased shot at the defendant twice.

Lora Gregory, the daughter of the defendant, as a witness in his behalf, testified that she saw the difficulty; that the deceased fired at the defendant, and that just as he fell, he threw his pistol over into the field. The defendant also testified to this fact.

During the examination of Henry Mann as a witness for the State, he testified that he was a son of the deceased, and was with the deceased at the time of the difficulty between him and the defendant. During his examination he was asked by the defendant the following question: "Had you been throwing rocks that day?" The State objected to this question, the court sustained the objection, and to this ruling the defendant duly excepted. The defendant also asked said witness the following questions: "Did your father have a jug of whiskey at home that day?" "Did he carry a jug of whiskey home that day?" "Did he leave the jug at home when he left?" The State separately objected to each of these questions, the court sustained each of such objections, and to each of these rulings the defendant separately excepted.

Dr. R. H. Baird was examined as a witness for the State, and testified that he was a practicing physician and was called to attend Bill Mann after he was shot, and that he died from the wounds inflicted, and that he gave to him some whiskey as a stimulant. On the cross-examination of the witness, Dr. Baird, he was asked by the defendant the following question: "Did you not discover evidence of whiskey having been taken by deceased before you gave him whiskey?" The State objected to this question, the court sustained the objection, and the defendant duly excepted.

Sam Patillo was introduced as a witness for the State, and testified that he knew the deceased, Bill Mann, in

his lifetime, that he saw him thirty minutes after he was shot, and saw him several times afterwards before he died; that the next morning after he was shot, he had a conversation with the deceased in which the latter said: "He got me." "I am satisfied one of these two holes (referring to shot between the shoulder and in the groin) will kill me." "If it was not for those two places I could. get well." This witness further testified that the deceased said repeatedly that he was satisfied that one of the two wounds referred to would kill him. The defendant objected to this witness testifying to the several statements made by the deceased, upon the ground that such testimony was incompetent, and that the statements of the deceased were not made under a sense of impending dissolution. The court overruled the objections, and to these rulings the defendant separately excepted. Thereupon the witness was asked to state what the deceased said about the difficulty in which he was shot. The defendant objected to his testifying to statements of the deceased, upon the ground that they were irrelevant, incompetent and were not shown to be dying declarations of the deceased. The court overruled the objection and the defendant duly excepted. The witness then testified that the deceased told him that while he, deceased, was passing by the defendant's house on the public road, the defendant ran up and asked him why he did not control his children, and that the defendant told him that he had stood it as long as he could, and then told him to get out of his buggy, and that just as the deceased was about to get out of his buggy Gregory shot him; that when the defendant first shot at him the deceased knocked the pistol up and the ball glanced his head and "kind of addled him." The defendant moved to exclude the testimony as to the statements made by the deceased, upon the ground that it was not shown that they were dying declarations, and duly excepted to the court overruling his motion.

Walter McConnell, a witness for the State, testified that about three-quarters of an hour after the deceased was shot, he, the witness, had a conversation with him, and that the deceased stated to him in said conversation

that "it is only a matter of time. I am going to die. It's only a matter of time. I am dead from here down (pointing to his waist) now." The defendant objected to these statements, because they were not shown to be the dying declarations of deceased and made under a sense of impending dissolution. The court overruled the objection and the defendant duly excepted. The witness then testified that he asked the deceased how the difficulty occurred; and testified that the deceased stated to him that after the defendant came up to him while he was in his buggy on the public road, the defendant told him that his children had been "rocking" his house; that the deceased said that he did not believe his children had done so, and that thereupon the defendant stated that he was going to settle it now and drew a revolver and began shooting. The defendant moved to exclude the testimony of this witness McConnell as to the statements made by the deceased, upon the ground that they were not shown to be dying declarations. The court overruled the motion, and to this ruling the defendant duly excepted.

The defendant introduced in evidence the showing of several absent witnesses, among whom were one Luther Baker, Boyd Gregory and Dr. W. W. Wharton. It was recited in the showing prepared for Luther Baker and Boyd Gregory that if they were present they would testify that the deceased had told them that he and others were going to whitecap the defendant, and expected to whip him or kill him, and that they each told the defendant of this, before the deceased was shot by the defendant. The showing made for Dr. W. W. Wharton was to the effect that he would testify that he attended the deceased during the time he was suffering from the wounds from which he died; that the deceased after such shooting, and when he was conscious, stated to the witness Wharton that "If Gregory's pistol had not been a self-acting pistol, he, Mann, would have gotten Gregory first," and that the deceased stated to the witness that he did not expect to die from the wounds inflicted. The State objected to the portion of the testimony of the witness Wharton which is stated above and moved the

court to exclude it. The court sustained the motion, refused to allow such portion of the testimony to go to the jury, and to this ruling the defendant duly excepted.

During the examination of the defendant as a witness, and after he had testified to the circumstances of the killing, he was asked by his attorney the following question: "Why did you have a pistol?" The State objected to this question, the court sustained the objection, and the defendant duly excepted.

In rebuttal the State introduced three witnesses who each testified that they knew Luther Baker, the witness whose showing had been introduced by the defendant, and knew the general character of said Baker in the neighborhood in which he lived, and that his character was bad, and that said witnesses would not believe said Baker on oath. The defendant separately objected to the introduction of the testimony of these witnesses, upon the ground that the showing of the witness Baker could not be impeached in such a manner. The court overruled the objections, and to each of such rulings the defendant separately excepted. In rebuttal the State introduced as witnesses one Tom Johnson and Howard Mann, who testified that the next morning after the defendant shot the deceased, they went into the field just across the road from where the shooting occurred, and into which the defendant and his daughter had testified the deceased threw his pistol, and did not find any pistol. The defendant objected to this testimony of each of said witnesses, and separately excepted to the court's overruling his objection.

The court, at the request of the State, gave to the jury the following written charges: (1.) "I charge you, gentlemen of the jury, that if after considering all the evidence you have a fixed conviction of the truth of the charge, you are satisfied beyond a reasonable doubt, and it is your duty to convict the defendant." (2.) "I charge you, gentlemen of the jury, if you believe from the evidence beyond a reasonable doubt that the defendant is guilty, though you also believe it possible that he is not guilty, you must convict him." (3.) "The fact, if it be a fact, that the deceased threatened to whitecap

or whip the defendant, is no excuse, under the law, to the defendant, if you are satisfied that he unlawfully killed the deceased." (4.) "Threats standing alone, no matter how strong, are no justification for a homicide." (5.) "The court charges the jury that the mere fact, if it be a fact, that the deceased made threats against the defendant, would not of itself be sufficient to justify the defendant in taking Mann's life." (6.) "I charge you, gentlemen of the jury, that the doubt that will justify an acquittal, must be actual and substantial, not a mere possible doubt. Because everything relating to human affairs and depending on moral evidence is open to some possible or imaginary doubt." (7.) "It is the law that all the jury must agree on the verdict before you can acquit or convict, and although some one of the jury might not believe that defendant was guilty beyond a reasonable doubt, this does not mean that you can acquit him for that reason."

To the giving of each of these charges the defendant separately excepted, and also separately excepted to the court's refusal to give each of the following written charges requested by him: (1.) "The court charges the jury that before they convict the defendant they must be satisfied to a moral certainty not only that the proof is consistent with defendant's guilt, but that it is wholly inconsistent with every other rational conclusion, and unless the jury are so convinced by the evidence of the defendant's guilt, that they would each venture to act upon that decision in the matter of the highest concern and importance to his own interest, then they must find the defendant not guilty." (2.) "The jury must find the defendant not guilty if the conduct of the defendant upon a reasonable hypothesis is consistent with his innocence." (3.) "The court charges the jury that they must try this case upon the evidence as detailed from the witness stand, and not as stated by the learned solicitor." (4.) "The jury are not authorized to convict on the evidence of a single witness, if they have a reasonable doubt as to the truth of his evidence." (5.) "The jury should not find the defendant guilty unless the evidence against him is such as to ex-

[Gregory v. The State.]

clude to a moral certainty every supposition of hypothesis but that of his guilt." (6.) "The jury should find the defendant not guilty, unless the evidence against his should be such as to exclude to a moral certainty every hypothesis but that of his guilt of the crime imputed to him." (7.) "The jury must be satisfied clearly, fully and conclusively, and to a moral certainty, of defendant's guilt, before they can convict him." (8.) "The defendant is entitled to be acquitted if the jury have any reasonable doubt of his guilt arising out of any part of the evidence, upon consideration of the evidence." (9.) "The court charges the jury that before a conviction can be had in this case the evidence should be strong enough to convince the jury beyond a reasonable doubt and to a moral certainty and that the evidence must be strong and convincing, otherwise the jury can not convict the defendant." (10.) "If one assaulted, suddenly and under the maddening influence of such assault slays his assailant, and there is nothing else in the transaction, this is manslaughter, and not murder." (11.) "The court charges the jury that if the jury, from a consideration of all the evidence in this case, have a reasonable doubt as to whether the defendant sought or provoked the difficulty, they will give him the benefit of such doubt and find that he did not seek to provoke a difficulty." (12.) "If the jury, from a consideration of all the evidence in the case, have a reasonable doubt as to whether or not the defendant entered into the difficulty willingly, they must give the defendant the benefit of such doubt, and find that he did not willingly enter into such difficulty."

GEORGE H. PARKER, JOHN A. LUSK and F. E. ST. JOHN, for appellant.—The motion to quash the special venire should have been granted.—1 Mayfield Dig. 325; *Thomas v. State,* 94 Ala. 74.

It was competent to prove that deceased was drinking, and for this purpose to show that he had whiskey, and the questions asked Henry Mann and Dr. Baird were clearly admissible as tending to establish that he had been drinking. If the deceased was intoxicated, it

was a circumstance which the jury could consider in determining whether or not there was a present, pressing necessity for the defendant to take the life of the deceased, to protect his own, or to prevent great bodily harm.—*Askew v. State,* 94 Ala. 8.

The predicate for the admission of a dying declaration as made by the witnesses, Sam Patillo and Walter McConnell, was not sufficient. To render the dying declaration admissible, it was necessary for the deceased to have believed that death was impending.—*Titus v. State,* 117 Ala. 16; *Justice v. State,* 99 Ala. 180; *Walker v. State,* 52 Ala. 192.

"Statements made by deceased after the fatal blow, though not offered as dying declarations, may be admissible by the defendant if they tend to contradict the dying declarations introduced by the State."—*Shell v. State,* 88 Ala. 14. Dying declarations made at different times, if inconsistent with each other, are to be considered by the jury, and they should weigh them and determine which, if either, is to be believed."—*Moore v. State,* 12 Ala. 54; *Burton's case,* 107 Ala. 114; *Pickens case,* 115 Ala. 42; *Brown's case,* 108 Ala. 18; 118 Ala. 111; *Segars v. State,* 86 Ala. 59; *Riley v. State,* 88 Ala. 188; *Joe v. State,* 38 Ala. 422; *Lowe v. State,* 88 Ala. 8; *Murphy v. State,* 108 Ala. 8.

MASSEY WILSON, Attorney-General, for the State. The court did not err in overruling the motion to quash the venire, by reason of the mistake made in the summons of one of the jurors.—*Caddell v. State,* 129 Ala. 57.

Evidence that the deceased had been drinking prior to the fatal rencounter could only be admissible in any case as bearing on the question of fault in bringing on the difficulty, and in determining who was the aggressor. At this stage of the case all evidence that had been introduced, showed that the defendant was at fault and was the aggressor, and consequently, that he could not set up self-defense. If the evidence was admissible later, it should have been re-offered.—*Teague v. State,* 120 Ala. 309; *Morrell v. State,* 136 Ala. 44; *Angling v. State,* 137 Ala. 17.

The declarations made by Mann to which the witnesses Patillo and McConnell testified were shown to have been made under a sense of impending dissolution, and were properly admitted. The mere fact that Mann died several days afterwards does not affect their admissibility. *Pulliam v. State,* 88 Ala. 1: .*Starks v. State,* 136 Ala. 9.

It was competent for the State to impeach the character of the witness Baker, whose showing had been introduced by the defendant.—*Pruitt v. State,* 92 Ala. 41; *Campbell v. State,* 23 Ala. 44; *Murphy v. State,* 108 Ala. 10.

The charges given at the request of the State asserted correct propositions.—*Sims v. State,* 100 Ala. 23; *Welsh v. State,* 96 Ala. 92; *Boulden v. State,* 102 Ala. 78; *Hale v. State,* 122 Ala. 89; *Andrews v. State,* 134 Ala. 47.

The court did not err in refusing the charges requested by the defendant.—*Rarden v. Cunningham,* 36 Ala. 263; *Verberg v. State,* 137 Ala. 73; *Sanders v. State,* 134 Ala. 74; *Perry v. State,* 87 Ala. 30; *White v. State,* 133 Ala. 122; *Holmes v. State,* 88 Ala. 26; *Smith v. State,* 11 Ala. 13.

TYSON, J.—The motion to quash the special *venire* because E. L. Garner was drawn and ordered summoned and the sheriff summoned T. J. Garner in his stead, presumably by mistake, was properly overruled. The question here presented is not materially different from the one where the sheriff's return as to a special venire-man is "not found." Where this is the case, this court has uniformly held this is not a ground to quash.—*Barnes v. State,* 134 Ala. 36; *Caddell v. State,* 129 Ala. 63; *Daughdrill v. State,* 113 Ala. 7.

In *Barnes' case,* it was pointed out that the cases of *Thomas,* (94 Ala. 74) and *Ryan* (100 Ala. 108), relied upon by appellant, have no application, for the reason that in those cases the persons not summoned were *regular petit jurors* for the week in which the case was set for trial. *Smith v. State,* 133 Ala. 73, is of the same character.

The question propounded to witness Henry Mann by defendant on cross-examination, "Had you been throwing rocks that day?" was wholly irrelevant. Had he answered it affirmatively, the answer would not, as is contended, have tended to show that he entertained feelings of hostility to defendant. The case of *Askew v. State*, 94 Ala. 4, in which this language was used: "It may be that the intoxication of the deceased was a circumstance to be considered by the jury in determining whether there was a present, pressing necessity for defendant to take the life of the deceased, to protect his own or to prevent great bodily harm," is relied upon as supporting the contention that the ruling of the court was erroneous in sustaining the objections to certain questions propounded upon cross-examination to witnesses Henry Mann and Dr. Baird. Conceding the soundness of the principle in a proper case, clearly the objections to the questions propounded to Mann were properly sustained. Whether the deceased had a jug of whiskey at his home on the day of the killing or carried one home on that day did not tend in the remotest degree to show that he was intoxicated when the difficulty occurred.

Again, conceding that Dr. Baird discovered evidence of whiskey having been taken by deceased after he was shot and further conceding that this fact would tend to establish that he was intoxicated when the shooting occurred, being offered, as it was, when there was no evidence before the court tending to establish the necessity to kill, was patently irrelevant. Obviously, it stands upon no higher plane than threats by deceased against his slayer. And these are never admissible until some evidence has been adduced tending to show self-defense. *Gafford v. State*, 122 Ala. 63, and cases there cited.

The trial judge could not know that such testimony would be subsequently offered by defendant. In short, at the stage of the trial at which this testimony was sought to be elicited, all the evidence that had been introduced showed, without adverse inference, the defendant to be the aggressor.

The dying declarations made by deceased deposed to by Patillo and McConnell were properly admitted. *Gibson v. State,* 126 Ala. 59; *Daughdrill v. State, supra; Jordan v. State,* 82 Ala. 1, and cases there cited.

The statement made by the deceased as to his condition and the circumstances under which it was made, differentiates it from those, held insufficient as a predicate, in the cases of *Titus* (117 Ala. 16), *Justice,* (19 Ala. 182) and *Walker,* (52 Ala. 192).

On the authority of *Shell v. State,* 88 Ala. 14, the court committed an error in excluding the statement in the showing made for Dr. Wharton, that deceased said to him, after he was wounded, "That if Gregory's pistol had not been a self-acting pistol, he, Mann, would have gotten Gregory first." This testimony tended to contradict the statement made by deceased to Patillo and McConnell, offered by the prosecution as to the difficulty resulting in the homicide.

We are unable to see the pertinency of the question asked witness Howard Mann, whether or not his father was a constable before and at the time he was killed.

The defendant was properly not allowed to state why he had the pistol on the occasion of the difficulty. His secret motive or purpose for having the pistol concealed on his person was not a matter to which he should have been allowed to depose to in his own behalf.—*Linnehan v. State,* 105 Ala. 21, 25.

It is true that when a showing has been introduced for an absent witness the opposite party will not be allowed to impeach the witness by proof of contradictory statements; the reason for this being that the necessary predicate cannot be laid.—*Gafford v. State,* 125 Ala. 1; *Pool v. Devers,* 30 Ala. 672. But the principle has no application when the impeachment is by showing the general character of the witness. When a showing is made for a witness and it is admitted as evidence, it cannot be doubted that it stands in the stead of his testimony, and for all the purposes of the trial it is his testimony as a witness on the stand, and must be taken by the jury as if the witness was actually present and had testified in person to the facts before the jury.—*Gaf-*

*ford's case, supra; Woolsey v. Jones,* 84 Ala. 88. This being true, "the universally accepted doctrine that evidence of the bad character of any person becoming a witness may be introduced by the adverse party for the purpose of showing that the testimony of such witness is unworthy of belief," (5 Am. & Eng. Encyc. Law, 2d ed., 874) applies.

The testimony of Johnson and Mann, offered by the State in rebuttal, was properly admitted. It tended in some degree to contradict the statement of defendant's daughter, Lora, that the deceased, just as he fell, threw his pistol over in the field.

Numerous other exceptions were reserved to the rulings of the court on the admission and exclusion of testimony, but they are not insisted on. However, we have examined them, and find no error in any of the rulings.

Nor are the written charges requested and given at the instance of the State insisted upon as being erroneous. Nor are they erroneous. Each of them asserts a correct proposition of law, and was properly given.

We have examined the several written charges refused to defendant, and find that there was no error in the refusal of any of them except the one numbered 2. That charge should have been given.

Reversed and remanded.