**Lurton Lewis HEFLIN, Jr., Appellant,**

v.

**UNITED STATES of America,
Appellee.**

No. 15161.

United States Court of Appeals
Fifth Circuit.
June 15, 1955.

**372**

John Samuel Tucker, Jr., Birmingham, Ala., for appellant.

Frank M. Johnson, Jr., U. S. Atty., Birmingham, Ala., M. Lewis Gwaltney, Raymond P. Mims, Asst. U. S. Attys., Birmingham, Ala., for appellee.

Before RIVES, TUTTLE and CAMERON, Circuit Judges.

TUTTLE, Circuit Judge.

Appellant was convicted on five counts relating to the robbery of a bank in Birmingham, and five sentences were imposed so as to run consecutively for a total of twenty years and two days. Count 1 charged a violation of 18 U.S.C.A. § 2113(a), in material part alleging that Heflin feloniously and by force and violence took from the "person and presence" of one Lawrence Brice, $53,-172.73 belonging to and in the possession of a National Bank member of the Federal Reserve System. Count 2 charged violation of 18 U.S.C.A. § 2113(b), taking and carrying away such money with intent to steal. Count 3 charged violation of 18 U.S.C.A. § 2113(d), taking such money from the "person and presence" of Brice and in so doing assaulting named persons with a revolver or pistol. Count 4 charged violation of 18 U.S.C.A. § 2113(c), receiving, concealing, storing, and disposing of said money, knowing it to have been taken from a member bank of the Federal Reserve System with intent to steal. Count 5 charged conspiracy to violate the above sections, and the overt act of taking the money.

Appellant specifies 42 errors, many of which are repetitious and some of which are so vague that we might well disregard them. For the sake of convenience we have condensed the 42 specifications into 10 points:

(1) The court erred in not dismissing the indictment, particularly as to counts 1 and 3, which allege that the money was taken from the "person *and* presence" of Brice instead of from his "person or presence."

(2) The court should have granted the motion for acquittal, particularly as to counts 1 and 3, because of the variance in the proof, which showed that the money was not taken from both the "person and presence" of Brice.

(3) The court erred in refusing to allow appellant to take the deposition of one Samuel Jay Hornbeck, and to allow a continuance for obtaining his testimony; and further in refusing a continuance on account of the absence of appellant's alibi witnesses Ray Boree and W. R. Boone.

(4) The court erred in admitting testimony of Mrs. Patsy Ruth Hornbeck, and then excluding it and ordering the jury not to consider it instead of granting a mistrial.

(5) The sentences imposed under counts 1, 2, 3 and 4 are invalid.

(6) The court erred in admitting or excluding testimony of appellant and witnesses Hicks, Moore, Prater, Goldman and Mrs. Loretta Heflin.

(7) The court erred in refusing to issue a subpoena to Albert Sidney Denton.

(8) The court erred in its charge and in refusing certain requested instructions, particularly in charging in substance that it is generally known that bank robbers dress in a manner to confuse their victims.

(9) The court erred in overruling challenges for cause of two jurors, necessitating the use of two of appellant's peremptory challenges.

(10) The court erred in refusing the motion for a new trial.

▮ (1) The indictment seems to us quite exemplary. Each count follows closely the language of the corresponding statute, and alleges each element of the offense charged. As for appellant's objection that the words "person" and "presence" should have been jointed by the disjunctive "or" instead of the conjunctive "and," quite the contrary is true.

"As a general rule, where a statute specifies several means or ways in which an offense may be committed in the alternative, it is bad pleading to allege such means or ways in the alternative; the proper way is to connect the various allegations in the accusing pleading with the conjunctive term 'and' and not with the word 'or.'" 42 C.J.S., Indictments and Informations, § 101, quoted in Price v. United States, 5 Cir., 150 F.2d 283, certiorari denied 326 U.S. 789, 66 S.Ct. 473, 90 L.Ed. 479. See also Johnson v. United States, 5 Cir., 207 F.2d 314, 319, 323.

Consequently we see no merit in this first contention of appellant.

▮ (2) Nor was it error to refuse to direct an acquittal. In answer to the particular contention that there was a variance as to counts 1 and 3 in that there was no proof that the money was taken from both the person *and* presence of Brice, the Government says that the defect was only formal and not prejudicial, and, besides, the taking was at least constructively from Brice's person. We think, however, that appellant's argument fails for the more vital reason that this was not a defect in the proof at all. The Government need never prove both a taking from the person and a taking from the presence. This is a corollary to the rule of pleading that such matters are to be alleged in the conjunctive, although existence of either alternative would constitute the offense as the statute defines it.

"When several acts specified in a statute are committed by the same person, they may be coupled in one count as together constituting one offense although a disjunctive word is used in the statute, and proof of any one of the acts joined in the conjunctive is sufficient to support a verdict of guilty. So where as here, the indictment charged that

the defendant did unlawfully remove, deposit, and conceal, it was enough to prove any one. Crain v. United States, 162 U.S. 625, 634–636, 16 S.Ct. 952, 40 L.Ed. 1097." Price v. United States, 5 Cir., 150 F.2d 283, 285.

As for the sufficiency of the evidence in general to support the jury's verdict, we are satisfied that there was no error. The Government had a notably strong case. Cletus Goldman, who was indicted in the same indictment for the same offenses, testified for the Government and gave a clear account of the whole affair. He said there were four participants in the robbery, himself, his brother Myron Goldman, Samuel Jay Hornbeck, and the appellant. These four met on various days prior to January 23, 1953, in Birmingham, where they were staying in various motels and a rented apartment. The witness said that they had come to Birmingham intending to commit a robbery, and had stolen several cars to use in their operations, but he did not know of the plan to rob the West End Branch Bank until January 22. On that date they drove to the vicinity of the bank, discussed the plan of the robbery and their several parts in it, went over their getaway route several times, and parked two stolen cars along the route. The next morning, January 23, the robbery was executed according to plan, the getaway was made, and the loot divided. On the 24th, Cletus Goldman and Heflin drove to Gulf Shores, Alabama, where they picked up Heflin's wife, and on the 25th the three drove to Savannah. The Government called ten bank employees and customers present at the robbery to testify. As might be expected, their testimony was conflicting in many details, as the number and identity of the participants. But on the whole their testimony accorded with Cletus Goldman's. Three witnesses identified Heflin fairly positively as a participant, and a fourth witness thought he resembled one of the robbers. Other Government witnesses corroborated many other details of Cletus Goldman's story, as the theft of an automobile, the switching of license plates, and sojourns at various motels. Appellant's appointed counsel conducted a vigorous defense, attacked Cletus Goldman's credibility, and cross-examined the Government witnesses at length; but although his brief makes much of the inconsistencies in testimony and the doubts as to indentification so educed, we are satisfied that the jury had ample evidence on which to base its verdict. They could well believe Cletus Goldman's entire story, corroborated as it was in all material points.

Evidently the jury did not believe Heflin's own tale that he had been in Birmingham with Hornbeck and the Goldman brothers prior to midnight, January 22, but then drove to Jacksonville, where all that he seems to have recalled doing was to have conversed with three men at a service station the morning of the 23rd. There was no evident purpose for the trip, and Heflin's testimony did not disclose whom else he may have seen, what else he did, or where he stayed in Jacksonville that night. He did say that he left for Gulf Shores on the 24th, picked up his wife, and drove to Savannah on the 25th.

We apprehend that the basic issue taken by the defense concerning the sufficiency of the proof is the identification of Heflin as one of the robbers. Considering the nature of the crime, where none of the victims knew the robbers, the victims must have been badly frightened, and the robbery was completed in a few minutes, the evidence of Heflin's identity was unusually strong. Cletus Goldman's identification was of course positive; certainly *he* made no mistake. The only question is rather whether he was lying, and certainly the jury could believe Heflin lied, and not Goldman. For the identification by other witnesses was naturally not as positive as Goldman's, but it was certain enough to justify the jury in believing Goldman on the question of identity. Heflin's own testimony established that he had several times been convicted; was a part-time professional gambler; had long associ-

ated with Hornbeck and the Goldmans; and was with them for several days shortly before this robbery. His testimony shows such an intimacy and matter-of-fact attitude toward crime, prisons, and convictions of his nearest associates, that his own testimony tended indeed to make Goldman's worthy of credence, even though he denied any participation in or knowledge of this particular conspiracy and robbery.

■ (3) The refusal to allow appellant to take Hornbeck's deposition was within the discretion of the trial court under Rule 15, Federal Rules of Criminal Procedure, 18 U.S.C.A. Hornbeck was at the time in a Florida penitentiary under sentence of death for murder. As far as this record shows, appellant is correct in saying that Hornbeck was a competent witness; but under Rule 15, the criterion by which the trial court orders the taking of a deposition is whether it is necessary in order to prevent a failure of justice. This discretion vested in the trial court is broad, and Rule 15 contemplates the taking of depositions in criminal cases only in exceptional instances, as the Notes of the Advisory Committee on Rules point out. Appellant's motion was filed at 4:00 p. m. on a Friday, only five days prior to the trial.[1] The prosecuting attorney was engaged in trying cases and was unable to go to Florida to take the deposition. The motion gave no reason for the lapse of 15 days between appointment of defense counsel and the filing of this motion, and we cannot now consider in determining the propriety of the order, counsel's afterthought in his appellate brief that he had meanwhile been ill. The denial of the motion seems to have been based partly on the lack of explanation for this delay, but primarily because of the failure of the motion papers to show that Hornbeck's testimony could in fact be obtained by deposition or otherwise. Nor did appellant amend his motion papers to show the practicability of

obtaining a deposition, although he had several days to ascertain if it was practicable. Since there was unexcused delay in filing the motion such that granting it would have disarranged the trial docket; and since the motion did not show that taking a deposition was practicable, there was no abuse of discretion in refusing it.

■ For like reason we think the court did not err in refusing a continuance. Appellant's motion papers did not contain a showing that Hornbeck's deposition could probably be obtained within a reasonable time, which is necessary to be shown. 12 Am.Jur., "Continuances," §§ 27, 35. This alone sufficed to justify the denial of a continuance, but in the abundance of caution the prosecution after such denial judicially admitted that Hornbeck would if present testify exactly as appellant claimed. This is generally held to defeat a motion for continuance by defendant in a criminal action. 12 Am.Jur., "Continuances," § 46; 3 Wigmore, Evidence (3d Ed.) § 888; see Nelson v. Devney, 7 Cir., 102 F.2d 487. As for the absence of witnesses Boree and Boone, subpoenas issued for them had been sent to the United States Marshal at Jacksonville for service, and the Marshal advised that he was unable to locate them. In the absence of a showing that appellant could probably locate and serve these witnesses within a reasonable time, it was within the trial court's discretion to refuse a continuance. Davenport v. United States, 5 Cir., 197 F.2d 157; Adams v. United States, 5 Cir., 128 F.2d 820; Woods v. United States, 8 Cir., 26 F.2d 63. See also Annotation, 41 A.L.R. 1530. And certainly there was no strong probability that the absence of these witnesses affected the result of the trial. See Lockhart v. United States, 6 Cir., 264 F. 14, 16, certiorari denied 254 U.S. 645, 41 S.Ct. 14, 65 L.Ed. 455.

■ (4) The admission of certain testimony of Mrs. Patsy Ruth Hornbeck

---

1. The motion was first denied by Judge Lynne, then renewed on the date of trial before Judge Grooms, who again denied the motion.

was improper, but we think its later exclusion and the instructions to the jury to disregard it cured the error. The testimony in question was admitted over the objection that it was hearsay and that no proper foundation had been laid for its introduction as impeaching evidence; it consisted of certain statements incriminating Heflin, made by Samuel Jay Hornbeck to the witness, his wife, inconsistent with his written statement previously admitted. Upon admitting Mrs. Hornbeck's testimony, the court cautioned the jury that it was admitted only as to the conspiracy count, and that it should be disregarded for all purposes if the jury found that the conspiracy had ended before the statements were made. After admission of the evidence the court concluded that the testimony was inadmissible, and it ordered the testimony excluded and carefully instructed the jury not to consider it even on the conspiracy count.

Certainly this was not admissible evidence over the objections raised. It was not admissible as a declaration of a co-conspirator in pursuance of a common purpose, as the court evidently first thought. Hornbeck's statements to his wife had nothing to do with accomplishing the purpose of the conspiracy; all the evidence showed that purpose had been accomplished and that the conspiracy had ended. Nor was this testimony admissible as impeachment. See Eason v. State, 30 Ala.App. 224, 4 So.2d 190, 191, certiorari denied 241 Ala. 570, 4 So.2d 192:

> "A party who, in order to avoid a continuance, admits that an absent witness would testify to certain facts is not, as a rule, thereby precluded from disproving such facts by refutable testimony. Although it is not permissible to impeach such witness by proof of contradictory statements because, manifestly, the necessary predicate cannot be laid, (Gregory v. State, 140 Ala. 16, 37 So. 259; Gafford v. State, 125 Ala. 1, 28 So. 406), yet the admission

that the witness, if present, would give certain testimony is not an admission of the truth thereof or that such testimony is indisputable. The legal effect of such showing is the admission by the opposite party that, if present, the witness would so testify, not that such testimony is true."

The rule quoted here is generally followed and seems to us sound. The federal practice as to continuances is not set out in the statutes or Federal Rules, but it does not differ substantially from state court practice except as provided by local rules. 11 Cyc.Fed.Proc. (3d Ed.) §§ 45.01–.02. We agree with appellant, then, that this testimony of Mrs. Hornbeck was not admissible under any theory.

Having carefully examined the testimony objected to, we are satisfied that it was not so likely to impress and prejudice the jury that the court's subsequent instructions to disregard it were insufficient to cure the error. We therefore apply the general rule and hold that the trial court did not err in refusing a mistrial. 1 Wigmore, Evidence (3d Ed.) § 19.

 (5) The Government's brief admits that there was error in the sentence imposed. Counts 1, 2 and 3 did not charge separate offenses, because 18 U.S. C.A. § 2113(a), (b), and (d) have been construed not as creating separate offenses, but only as creating different maximum punishments for a single offense depending on the existence of aggravating circumstances. It follows that only a single sentence should have been imposed under counts 1, 2 and 3, not exceeding a $10,000 fine and 25 years' imprisonment. Wells v. United States, 5 Cir., 124 F.2d 334; Durrett v. United States, 5 Cir., 107 F.2d 438. However, receiving stolen money and conspiracy are offenses separate from bank robbery, and consist of distinctly different elements. The convictions under counts 4 and 5 may therefore stand.

(6–10) The remaining points relied upon by appellant are not briefed by either side, and we find so little substance in them that we shall deal with them in a few words. With regard to errors in admitting or excluding evidence, no specific instances (other than the testimony of Mrs. Hornbeck discussed supra) are called to our attention, and a close examination of the record fails to disclose any prejudicial error. The colloquy of court and counsel indicates that the reason why the court refused to subpoena Albert Sidney Denton, then imprisoned in an Alabama penitentiary, was because appellant's motion papers showed that his testimony would be purely hearsay. The motion papers are not in the record before us, and there is nothing therein to show any error in this matter, for of course such a motion for issuance of a subpoena under Rule 17(b), Federal Rules of Criminal Procedure, must show the evidence sought will be competent as well as material, for denial thereof to constitute prejudicial error. We find no prejudicial error in the court's oral charge;[2] and such of the appellant's requested instructions refused by the court, as correctly stated the law, were sufficiently covered by the court's oral charge, we think. If any error was committed in overruling the two challenges of jurors for cause, clearly there was no prejudice shown, since the record does not show that appellant used all of the 10 peremptory challenges to which he was entitled. Rule 24(b), Federal Rules of Criminal Procedure. Finally, as to the denial of the motion for a new trial, there was clearly no abuse of the trial court's discretion.

Because of the error in treating counts 1, 2 and 3 as separate crimes, the convictions of counts 1 and 2 must be reversed. There being no other error, the convictions of counts 3, 4 and 5 are affirmed, and the case is remanded for vacation of the erroneous sentence and the imposition of sentence in accordance with the principles herein expressed.

2. Appellant specifically objects to the following language, which we find quite innocuous:

"* * * there has been testimony with respect to clothes here that certain individuals wore. That goes to the issue of identification.

"Of course, as you gentlemen know people that are bent on the commission of crime try to cover up sometimes, and you will just have to use your own judgment in passing upon the weight of the testimony in those respects."